## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

VERONICA LEE KELLEY,

     Plaintiff,

v.                                          Civ. No. 21-12 KWR/GJF

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

     Defendant.

### PROPOSED FINDINGS AND
### RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon Plaintiff Veronica Kelley's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" [ECF 18] ("Motion"). The Motion is fully briefed. ECF 20 (response); ECF 23 (reply). Having meticulously reviewed the entire record and the parties' briefing, the Court recommends that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant case be **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

Plaintiff is fifty-one years old. Administrative Record ("AR") at 100. Plaintiff has past work experience as a hotel clerk, a chemical laboratory technician, administrative clerk, and a shipping and receiving clerk. *Id.* at 602. Plaintiff lives with her husband, who is employed as an estimator at Los Alamos National Laboratory, and her two children. *Id.* at 80–81. Plaintiff filed an initial claim for disability insurance benefits in September 2014 due to her alleged lupus, Sjogren's syndrome, Raynaud's syndrome, fibromyalgia, fatty liver disease, and hypersomnia. *Id.* at 110.[1]

---

[1] Plaintiff's date last insured was December 31, 2014, and Plaintiff's (amended) alleged disability onset date is July 1, 2012. AR at 644, 646. Accordingly, the SSA considered whether Plaintiff was disabled between July 1, 2012, and December 31, 2014. *Id.* at 656; *see also* 20 C.F.R. § 404.131(b)(1) ("To become entitled to disability insurance

Her claim was denied initially and on reconsideration in 2015. *Id.* at 110–35. In December 2017, following a hearing held at Plaintiff's request, Administrative Law Judge Lilian Richter found that Plaintiff was not disabled. *Id.* at 42. Plaintiff then appealed the ALJ's decision to United States District Court. *Id.* at 673. On appeal, United States Magistrate Judge Laura Fashing remanded the case back to the Social Security Administration ("SSA") so that the ALJ could resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. *Kelley v. Saul*, 1:18-cv-01056-LF, 2019 WL 7293408, at *5 (D.N.M. Dec. 30, 2019). On remand, in November 2020, following another hearing on the matter, *id.* at 617–40, ALJ Richter again found that Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 603. Plaintiff filed the instant appeal in January 2021. ECF 1.

## II.   PLAINTIFF'S CLAIMS

Plaintiff argues that ALJ Richter erred by: (1) picking and choosing among the limitations assessed by psychologist Dr. Jon Mourot, PhD; (2) improperly rejecting the opinion of psychological consultative examiner Daniel Hendricks, PhD; and (3) failing to properly account for Plaintiff's subjective allegations of pain and other symptoms in Plaintiff's Residual Functional Capacity ("RFC"). ECF 18 at 2.[2]

---

benefits, you must have disability insured status in the first full month that you are disabled").

[2] The RFC describes the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1).

III.    STANDARD OF REVIEW

A.  Substantial Evidence

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show ... [she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And ... the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[she] is not presently engaged in substantial gainful activity," (2) that "[she] has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

## III. ALJ'S 2020 FINDINGS AND DECISION

### A. Steps One Through Three

At step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity "during the period from her alleged onset date of July 1, 2012, through her date last insured of December 31, 2014." AR at 593. At step two, the ALJ determined that Plaintiff was severely impaired by: (1) systemic lupus erythematosus; (2) fatigue; (3) fibromyalgia; (4) Raynaud's syndrome; (5) somatic symptom disorder; (6) mild neurocognitive disorder; (7) Sjogren's

syndrome; (8) fibromyositis; (9) anxiety; and (10) depression. *Id.* The ALJ, however, found that

Plaintiff's medically determinable impairments of restless leg syndrome, right elbow tendinitis,

hepatic steatosis, and hypersomnia were not severe, within the context of the Social Security Act,

because those impairments did "not cause more than a minimal limitation of physical or mental

ability to do basic work activities." *Id.* at 593–94. At step three, the ALJ concluded that Plaintiff did

not have "an impairment or [a] combination of impairments that met or medically equaled the

severity of one of the listed impairments." *Id.* at 594. (citing 20 C.F.R. §§ 404.1520(d), 404.1525,

404.1526).[3]

## B. Step Four[4]

### 1. ALJ's RFC Assessment

After "careful consideration of the entire record" the ALJ found that Plaintiff had the RFC

to:

> perform light work[5] … except she could occasionally stoop, kneel, crouch, crawl
> and balance; occasionally climb ramps and stairs but never balance or climb ladders,
> ropes or scaffolds; she should avoid exposure to unprotected heights, hazardous
> machinery and extreme cold; she could frequently reach, handle, finger, and feel
> bilaterally; … limited to simple routine work; and she could not perform work

---

[3] "Listed impairments" refer to certain impairments identified in the regulations. 20 C.F.R. § 404.1520(d). When the SSA finds that any of a claimant's impairments meets or medically equals one of those "listed impairments," the SSA will find the claimant disabled without considering the claimant's "age, education, and work experience." *Id.*

[4] The Tenth Circuit has described step four of the sequential evaluation process as occurring in three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental residual functional capacity. *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, she could meet the physical and/or mental demands of her past relevant work. *Id.*

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

outside.

*Id.* at 596. In making this RFC assessment, the ALJ considered Plaintiff's subjective descriptions of her symptoms, her activities of daily living, objective medical evidence, and medical opinion evidence.

The ALJ began by considering Plaintiff's account of the limiting effects of her symptoms and her activities of daily living. The ALJ observed that while Plaintiff complained of fatigue and foot pain, she reported no other type of pain. *Id.* at 598. Similarly, although Plaintiff described difficulty sleeping, her symptoms improved with medication. *Id.* The ALJ also noted that there was evidence of Plaintiff's descriptions of her symptoms made after her date last insured—December 30, 2014—but observed that those statements were made after "the relevant period." *Id.* at 598–99. Despite her alleged symptoms, Plaintiff cares for her children, makes simple meals, assists in household chores, shops with brick-and-mortar as well as online retailers, and goes out frequently to restaurants and movie theaters. *Id.* at 597.

The ALJ then discussed the objective medical evidence regarding Plaintiff's alleged physical symptoms. The ALJ observed that while the medical record evinced that Plaintiff was diagnosed with many of the conditions she alleged, Plaintiff was not compliant with recommended treatment. *Id.* at 597–98 (citing *id.* at 294, 376).  And while Plaintiff sought care for her alleged pain, healthcare providers observed that Plaintiff walked with a normal gait, displayed good strength, and had a good range of motion in her joints. *Id.* (citing *id.* at 294–95). Moreover, the ALJ noted that Plaintiff's medication refill records reflected that her symptoms were well managed. *Id.* (citing *id* at 376).

The ALJ also considered the objective medical evidence regarding Plaintiff's alleged mental

symptoms. The ALJ observed that the record demonstrated that Plaintiff denied problems with anxiety and depression, functioned in the average to above average range of intelligence, did not have delusions, denied having suicidal thoughts, and displayed good insight and judgment. *Id.* at 599 (citing *id.* at 525–31). The ALJ further noted that despite Plaintiff's complaints of poor short-term memory and concentration, her mental healthcare provider observed good results in memory testing. *Id.* (citing *id.* at 525–31). Notably, the ALJ observed that Plaintiff had received "little treatment" during the relevant period for both her alleged physical and mental impairments. *Id.*

Last, the ALJ "considered all medical opinions" in the record, stating that "when there are inconsistencies between the evidence and the opinions, [she must] determine how to weigh the opinions and evidence." *Id.* at 600. The ALJ further wrote that "[i]n making these determinations, [she] consider[s] the types of relationships the opinion sources have with the claimant (e.g., treating, non-treating, and non-examining), the length of treatments, the nature of the treatments, the consistency of the opinions with the record, and the supportability of the opinions with objective evidence, medical signs or laboratory findings." *Id.*

The ALJ first assessed the opinion of Dr. Daniel Hendricks, PhD, which was based on a two-hour examination of Plaintiff in January 2015. *Id.* at 525.  Dr. Hendricks reported that Plaintiff claimed she suffered from "fatigue and pain" and concluded that her symptoms were "not well controlled." *Id.* at 528. Dr. Hendricks opined that Plaintiff's "life seem[ed] to be severely limited by her fatigue and pain." *Id.* Dr. Hendricks further stated that Plaintiff "would be unable to maintain concentration during a normal 8 hour work day." *Id.*

The ALJ rejected Dr. Hendricks's opinion and provided a detailed explanation for her

decision. *Id.* at 600.[6] The ALJ found that Dr. Hendricks's ultimate opinion was "unsupported by his examination findings during which he noted no memory issues, the ability to engage in abstract thinking, normal speech, fully oriented, no delusions and no loosening of associations." *Id.* Moreover, the ALJ found Dr. Hendricks's assessment unpersuasive because she believed that his conclusions were based entirely on Plaintiff's "subjective reports," instead of his own objective analysis. *Id.* The ALJ noted that although she relied on Dr. Hendricks's "essentially benign examination findings" in formulating the RFC, she assessed Plaintiff with limitations that "account[ed] for her subjective reports of pain and limitation." *Id.*

The ALJ then addressed the opinions of the state agency medical consultants. Dr. Martha Lauster, MD, opined that while Plaintiff complained of severe pain, Plaintiff's lack of "significant longitudinal pain-relief seeking behavior" and her "partially credible" reports of her activities of daily living warranted a limitation to light work. *Id.* at 110–11. At the reconsideration level, Dr. H. Bronstein, MD, affirmed Dr. Lauster's opinion but limited Plaintiff to further postural and environmental limitations. *Id.* at 129–30. The ALJ afforded these opinions "some weight" because Drs. Lauster and Bronstein did not examine Plaintiff and because the record supported more severe limitation. *Id.* at 601.

Next, the ALJ considered the opinion of state psychological consultant Dr. Jon Etienne Mourot, PhD. *Id.* at 112.[7] Giving "great weight" to Dr. Hendricks's earlier opinion, Dr. Mourot opined that Plaintiff could perform unskilled work but that she was further limited to performing

---

[6] Although the ALJ wrote that she gave Dr. Hendricks' opinion "little weight," AR at 600, the Tenth Circuit has observed that an ALJ "effectively" rejects an opinion by giving it "little weight." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

[7] Plaintiff's mental residual functional capacity was not reassessed at the reconsideration stage. AR at 118–32.

one- or two-step tasks and having limited "public or interpersonal contact." *Id.* at 112–13. The ALJ gave Dr. Mourot's opinion "some weight" because it was made in significant reliance on Dr. Hendricks's earlier opinion, which the ALJ "did not find to be particularly persuasive." *Id.* at 601.

Last, the ALJ considered the opinion of Dr. Paula Hughson, MD. *Id.* Dr. Hughson performed a two-hour psychiatric evaluation, at the request of Plaintiff's counsel, in April 2018. *Id.* at 822. Dr. Hughson noted that Plaintiff's past history was "notable for significant emotional and physical trauma at various stages in her life." *Id.* at 829. Dr. Hughson considered Plaintiff "a reliable informant" and concluded that Plaintiff's "functioning [was] obviously significantly affected." *Id.* Dr. Hughson also completed a check-the-box questionnaire, opining that Plaintiff had "moderate" limitations in following detailed or complex instructions, working without supervision, interacting with coworkers, interacting with supervisors, and adapting to changes in the workplace. *Id.* at 834. Dr. Hughson further opined that Plaintiff had moderate to marked limitations in attending and concentrating as well as interacting with the public. *Id.* And Dr. Hughson concluded that Plaintiff had marked limitations in carrying out instructions and using public transportation or traveling to unfamiliar places. *Id.* The ALJ gave Dr. Hughson's opinion "little weight" because it was made after the relevant period, was not well supported by the record, and was inconsistent with Dr. Hughson's own examination findings. *Id.* at 601.

In light of the foregoing evidence, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [her] alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 597.

2.  <u>Past Relevant Work</u>

Plaintiff had past relevant work as a hotel clerk, chemical laboratory technician, administrative clerk, and a shipping and receiving clerk. *Id.* at 602. Because the vocational expert testified that Plaintiff's limitations would preclude her from performing her past work, the ALJ found the same and proceeded to step five of the sequential evaluation process. *Id.*

**C. Step Five**

Plaintiff was forty-four years old on the date she was last insured, making her a "younger individual" under the Social Security Act. *Id.*; 20 C.F.R. § 404.1563(c) ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work."). At the hearing, the vocational expert testified that Plaintiff could perform the representative light work occupations of small products assembler (80,000 jobs in the national economy), counter clerk (90,000 jobs in the national economy), and cafeteria attendant (90,000 jobs in the national economy). *Id.* at 902. In addition, the vocational expert found that Plaintiff could also perform the representative sedentary[8] occupations of nut sorter (40,000 jobs in the national economy), lampshade assembler (30,000 jobs in the national economy), and stuffer (50,000 jobs in the national economy). After finding that Plaintiff could work representative occupations that exist in significant numbers in the national economy, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 1, 2012[,] through December 31, 2014, the date last insured." *Id.* at 603 (citing 20 C.F.R. § 404.1520(g)).

---

[8] In contrast to "light work," defined *supra* at n.5, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

## IV.  ANALYSIS

Generally, Plaintiff contends that the ALJ erred at step four of the sequential evaluation process. The Court disagrees and holds that the ALJ did not (1) improperly pick and choose among the limitations assessed by Dr. Mourot, (2) improperly reject Dr. Hendricks' opinion, or (3) improperly assess Plaintiff's subjective allegations of pain and other symptoms.

### A. The ALJ Did Not Err in Weighing Dr. Mourot's Opinion

Dr. Mourot gave his opinion using a form document provided by the state agency, which included a set of questions intended to "help determine [Plaintiff's] ability to perform sustained work activities." AR at 111. In response to those questions, Dr. Mourot assessed Plaintiff with several moderate limitations. *Id.* Plaintiff argues that the ALJ erred by "not explain[ing] how she either incorporated or rejected" those moderate limitations. ECF 18 at 10. But because the ALJ adequately explained her decision, the Court holds that the ALJ did not err in assessing Dr. Mourot's opinion.

To determine whether a claimant is disabled, the SSA considers medical opinions in conjunction with the other relevant evidence in the record. 20 C.F.R. § 404.1527(b). To weigh the opinions in the record, an ALJ considers: (1) the examining relationship between the opinion source and the claimant; (2) the treatment relationship between the source and the claimant; (3) whether the opinion is supported by relevant evidence, particularly objective medical evidence; (4) whether the opinion is supported by the record; (5) whether the source's opinion is on an area in which the source is an expert; and (6) any other factors that "tend to support or contradict the medical opinion." § 404.1527(c)(1)-(6). In her written decision, the ALJ must explain the weight she gives to the medical opinions the record. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). That

explanation, however, need not explicitly address each of the six factors described by the regulations. *C.f. Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review."). Instead, the ALJ's explanation must only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator" gave the opinion and the reasons for that weight. *C.f.* SSR 96-2p, 1996 WL 374188, at *5 (applying to *treating* source medical opinions).

In line with this principle, the Tenth Circuit has held that "[a]n ALJ is not entitled to pick and choose through an *uncontradicted* medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004)) (emphasis added). Indeed, while an ALJ is entitled to resolve any conflicts in the record, the ALJ must *explain* which evidence conflicts with a medical opinion. *See id.* (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991))).

The ALJ adequately explained her weighing decision with respect to Dr. Mourot's opinion. The ALJ wrote that she gave Dr. Mourot's opinion only "some" weight because it was made in reliance on Dr. Hendricks's opinion, which the ALJ had rejected. AR at 601. Although the ALJ's explanation with respect to Dr. Mourot's opinion was relatively terse, she did provide a detailed explanation as to why she rejected Dr. Hendricks's opinion. *Id.* The ALJ stated that she found Dr. Hendricks's opinion unpersuasive because it was inconsistent with his own largely benign examination findings and Plaintiff's own account of her activities of daily living. *Id.*; *see also* 20

C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Relying on *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), Plaintiff argues that the ALJ's decision should be remanded "on the basis that the ALJ picked and chose from amongst the *moderate* limitations" assessed by Dr. Mourot. ECF 18 at 11 (emphasis in original). In *Haga*, Dr. Rawlings, a consulting mental health professional, opined that the Plaintiff had seven moderate impairments. *Id.* at 1207. Without rejecting Dr. Rawlings's opinion and without explanation, the ALJ adopted four of Dr. Rawlings's assessments and rejected the remainder. *Id.* at 1207–08. The Tenth Circuit remanded the case because the ALJ didn't *explain* why he adopted some of Dr. Rawlings's assessments and rejected others. *Id.* at 1208. In other words, the Tenth Circuit held that "[a]n ALJ is not entitled to pick and choose through an *uncontradicted* medical opinion, taking only the parts that are favorable to a finding of nondisability." *Id.* (emphasis added). *Haga*, however, is inapposite here because Dr. Mourot's opinion was not *uncontradicted*. Instead, like Dr. Hendricks' opinion, the ALJ found that it was inconsistent with the record.

**B. The ALJ Provided Adequate Reasons for Rejecting Dr. Hendricks's Opinion**

Plaintiff argues that the ALJ erred by providing inadequate reasons for rejecting Dr. Hendricks's opinion. ECF 18 at 19. Specifically, Plaintiff contends that the ALJ erred by (1) mischaracterizing the evidence; (2) discounting Dr. Hendricks's opinion because it relied on Plaintiff's subjective complaints; (3) discounting Dr. Hendricks's opinion on Plaintiff's physical symptoms; (4) not discussing certain testimony on Plaintiff's activities of daily living; (5) improperly finding Dr. Hendricks's opinion inconsistent with examination findings submitted by Dr. Raul Young-Rodriguez, MD; and (6) improperly discounting Dr. Hendricks's opinion because

he did not opine on specific functional limitations. ECF 18 at 19. As an initial matter, the Court explains that the ALJ did not err in weighing Dr. Hendricks's opinion. Next, the Court addresses each of Plaintiff's alleged points of error and rejects them.

An ALJ must weigh each of the medical opinions in the record and then discuss the weight she assigns to those opinions. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 (10th Cir. 2012). "An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted, of course," but the ALJ must "'provide specific, legitimate reasons for rejecting it.'" *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003)). The ALJ need not discuss every factor identified in 20 C.F.R. § 404.1527(d)(2), in articulating her weighing decision. *Oldham v. Astrue*, 509 F.3d 1254, 1259 (10th Cir. 2007). Instead, the ALJ's decision must simply be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the'" medical opinion and the reasons for that weight. *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The mere fact that an opinion came from an examining rather than a treating physician, however, is not a sufficient basis to reject an opinion. *Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014) (citing *Chapo*, 682 F.3d at 1291) (unpublished). A medical opinion likewise cannot be discounted on the sole basis that it was prepared at request of a claimant's counsel. *Id.* (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)).

The ALJ provided a sufficient explanation for the weight she gave Dr. Hendricks's opinion. The ALJ observed that Dr. Hendricks's ultimate conclusion (i.e., that Plaintiff would be unable to maintain concentration during a normal workday) was not supported by his examination findings. AR at 600; 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to

support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). The ALJ was further unconvinced by Dr. Hendricks's opinion because she found that his conclusions were largely based on the Plaintiff's own subjective reports on the limiting effects of her symptoms, not his own objective analysis. AR at 600; *see Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (holding that an ALJ did not err by rejecting an examining physician's opinion because the physician's opinion was based on "a single, subjective report given to him" by the plaintiff). In addition, the ALJ noted that Dr. Hendricks's opinion on Plaintiff's mental limitations was based in part on his assessment of Plaintiff's physical limitations, which were not within Dr. Hendricks's area of expertise to assess. AR at 600; 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to a medical opinion of a source who is not a specialist."). Moreover, the ALJ found that Dr. Hendricks's assessment was inconsistent with Plaintiff's report of her activities of daily living and other objective medical evidence in the record. AR at 600; 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). In fact, in light of the objective medical evidence of record, the ALJ limited Plaintiff to a *further* extent than Dr. Hendricks's benign examination findings would have supported with respect to Plaintiff's mental abilities. AR at 600. Because the ALJ explained her decision to reject Dr. Hendricks's opinion, and did so by applying the factors outlined in 20 C.F.R. § 404.1527(c), the Court holds that the ALJ did not err in weighing Dr. Hendricks's opinion.

Plaintiff argues that the ALJ erred by finding that Dr. Hendricks's conclusion on Plaintiff's ability to complete a normal workday was unsupported by his examination findings. ECF 18 at 11.

In support, Plaintiff directs the Court's attention to an excerpt of Dr. Hendricks's examination notes, which stated that Plaintiff would have difficulty concentrating due to her fibromyalgia. *Id.* at 14 (citing AR at 527). A review of the record, however, reveals that Dr. Hendricks also reported facts that undercut this conclusion. For example, Dr. Hendricks stated that Plaintiff assists in caring for her children, assists in daily household chores, sees her friends every day, reads, shops for groceries, and engages in card-making as a hobby. AR at 526–27. Dr. Hendricks also noted that Plaintiff appeared "to be functioning in the Average to Above Average range of intelligence" and that she appeared to have developed many methods to cope with her alleged pain. *Id.* at 527. Moreover, Dr. Hendricks observed that Plaintiff was able to complete short memory tests and was oriented to person, place, date, and situation. *Id.* The ALJ was entitled to resolve the inconsistency between Dr. Hendricks's examination findings, *Haga*, 482 F.3d at 1208, and the Court will not reweigh the evidence to second-guess her decision, *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (observing that courts may not reweigh the evidence nor substitute their judgment for that of the ALJ).

Plaintiff insists that the ALJ was not permitted to discount Dr. Hendricks's opinion on the basis that it was derived largely from Plaintiff's own report of the limiting effects of her symptoms. *Id.* at 15. Indeed, as Plaintiff says, the Tenth Circuit has acknowledged that the practice of psychology can sometimes be necessarily dependent on a patient's subjective statements, *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005), and that an opinion on a claimant's mental health may be based on observed symptoms, *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). But Plaintiff cites no authority, and the Court is aware of none, for the proposition that an ALJ may not cite the fact that an opinion was based largely on a claimant's own reports as a basis

for discounting that opinion. *See* ECF 18 at 15. Instead, the Tenth Circuit has explicitly approved an ALJ's rejection of an examining physician's opinion on that basis. *See Flaherty*, 515 F.3d at 1071.

Plaintiff contends that the ALJ erred by discounting Dr. Hendricks's opinion because it appeared to be based on his assessment of Plaintiff's physical limitations. ECF 18 at 15–16. Plaintiff emphasizes that Dr. Hendricks *only* diagnosed Plaintiff with somatic symptom disorder, a mental disorder, which necessarily requires a discussion of Plaintiff's complaints of pain. *Id.* The Court, however, agrees with the ALJ that much of Dr. Hendricks's opinion was couched in physical diagnoses. For example, Dr. Hendricks opined that Plaintiff's "life seem[ed] to be severely limited by her fatigue and pain." AR at 526. And Dr. Hendricks intimated that Plaintiff had a "limited lifestyle" because she was limited by "her fatigue and pain." *Id.* at 527. To be sure, Dr. Hendricks's opinion could be read in such a way so as to understand it as not being premised on Plaintiff's physical symptoms, but the Court will not reweigh the evidence. *Hendron*, 767 F.3d at 954. Because the regulations require an ALJ to consider whether a medical source is a specialist on an area in which he is opining, 20 C.F.R. § 404.1527 (5), the Court holds that the ALJ did not err by considering whether Dr. Hendricks was qualified to opine on Plaintiff's physical symptoms.

Plaintiff argues that the ALJ improperly focused on Plaintiff's activities of daily living that supported a finding of not disabled and by not addressing the relevant evidence that supported a disability finding. ECF 18 at 17–18. While an ALJ is not required to discuss every piece of evidence in the record, *Wilson v. Astrue*, 602 F.3d 1136, 1149 (10th Cir. 2010) ("There is obviously no requirement that the ALJ reference everything in the administrative record." (citing *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009))), an ALJ may not pick and choose through the

evidence, discussing only the pieces that support a finding that the plaintiff is not disabled, *Haga*, 482 F.3d at 1208. While the ALJ discussed the activities of Plaintiff's daily living that supported a non-disabled finding (e.g., taking care of her children, assisting in household chores, engaging with hobbies), the ALJ also took care to note that Plaintiff's ability to take care of her children was impaired by her fatigue, that her husband put Plaintiff's children to bed, and that Plaintiff's pain made it difficult for her to sit for extended periods. AR at 598–600. Accordingly, the Court does not find that the ALJ improperly picked and chose through the evidence on Plaintiff's activities of daily living in weighing Dr. Hendricks's opinion.

Plaintiff asserts that the ALJ should not have cited the results of a 2015 examination conducted by Dr. Raul Young-Rodriguez, MD, as evidence inconsistent with Dr. Hendricks's opinion because the ALJ did not weigh Dr. Young-Rodriguez's findings. *Id.* at 18. "Regardless of its source," the SSA must evaluate (i.e., weigh) every medical opinion it receives. 20 C.F.R. § 404.1527(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions." § 404.1527(a)(1). The ALJ was not required to weigh Dr. Young-Rodriguez's report because he did not opine on the limiting effect of Plaintiff's symptoms. *See* AR at 532; *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (unpublished) (holding that because a consultative examiner "did not assign any functional limitations," the "ALJ was not required to consider" the examiner's opinion). Moreover, the ALJ did not err in comparing Dr. Hendricks's conclusions to Dr. Young-Rodriguez's examination findings because the regulations explicitly require an ALJ to consider whether a medical opinion is consistent with other evidence in the record. 20 C.F.R. §

19

404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion.").

Finally, Plaintiff contends that the ALJ erred by finding that Dr. Hendricks "'failed to provide specific functional limitations.'" ECF 18 at 19 (quoting AR at 600). In support of her position, Plaintiff cites *McGehee v. Saul*, Civ. No. 18-1164 KK, 2019 WL 6219507 (D.N.M. Nov. 21, 2019). *Id.* There, the court addressed whether the ALJ provided adequate reasons for rejecting the opinion of an examining source. *Id.* at *7. The ALJ conferred "some weight" to that source's opinion for three reasons, one of which was because "she did not offer an opinion as to [the plaintiff's] abilities function by function." *Id.* (internal quotation marks omitted). The court found that the ALJ's asserted basis (i.e., that the medical source did not perform a function-by-function assessment) was not supported by substantial evidence because the examining source *did* opine on the plaintiff's work-related limitations, function-by-function. *Id.* at *8. In addition, the Court held that whether a medical source gives an opinion assessing a claimant's work-related limitations, function-by-function, is not a relevant consideration in weighing that opinion. *Id.* Because the court found that the other two bases the ALJ cited in his weighing decision were inadequate, the court remanded the cases back to the SSA because the ALJ failed to comply with the correct legal standards for weighing the examining source's opinion. *Id.*

The Court is persuaded by *McGehee* that Dr. Hendricks's failure to opine on Plaintiff's specific functional limitations was not a relevant consideration for weighing his opinion. *See* 20 C.F.R. § 404. 1527(c)(1)-(6) (detailing factors an ALJ must consider in weighing a medical opinion). The Court is, however, not persuaded that the ALJ's invocation of this improper basis warrants remand because, as discussed *supra*, the ALJ articulated other permissible bases for

20

rejecting Dr. Hendricks's opinion. *C.f. McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010))).

**C. The ALJ Properly Considered Plaintiff's Subjective Allegations of Pain and Other Symptoms Pursuant to SSR 96-8p and SSR 16-3p**

Plaintiff's final argument is that the RFC was not based on substantial evidence because the ALJ did not properly analyze Plaintiff's subjective allegations of the limiting effect of her pain and other symptoms. ECF 18 at 27.

An ALJ assesses the RFC based on "all of the relevant evidence in the case record, including information about the [claimant's] symptoms." SSR 96-8p, 1996 WL 374184, at *2. The SSA defines "symptoms" as a claimant's "*own* description or statement of his or her physical or mental impairments." SSR 16-3p, 2017 WL 5180304, at *2 (emphasis added). Under SSA regulations, a claimant's "statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." *Id.* To evaluate the limiting effect of a claimant's symptoms, the SSA employs a two-step test. *Id.* At step one, the SSA "determine[s] whether the [claimant] has a medically determinable impairment … that could reasonably be expected to produce the [claimant's] alleged symptoms." *Id.* Indeed, the SSA will not find that a symptom affects a claimant's ability to work unless "medical signs or laboratory findings show a medically determinable impairment is present." *Id.* at *3. At step two, the SSA "evaluate[s] the intensity and persistence of [a claimant's] symptoms such as pain and determine[s] the extent to which [the claimant's] symptoms limit his or her ability to perform work-related activities." *Id.* at *4. In doing so, the SSA "examine[s] the entire case record, including the objective medical evidence; [a claimant's] statements about the intensity, persistence, and limiting effects of symptoms;

statements and other information provided by medical sources and other persons; and any other relevant evidence in the [claimant's] case record." *Id.*[9]

Here, the Court holds that the ALJ properly applied SSA regulations and guidance in evaluating Plaintiff's subjective complaints of pain and other symptoms. The ALJ noted that Plaintiff alleged "disability due to severe, constant pain." AR at 597. And, in accordance with SSR 16-3p, the ALJ found that "Plaintiff's medically determinable impairments could reasonably be expected to cause some of [her] alleged symptoms." *Id.* Likewise in accordance with SSR 16-3p, the ALJ considered whether the record supported the limiting effect of Plaintiff's symptoms. The ALJ found that Plaintiff's activities of daily living, "suggest[ed] a greater degree of functional capacity than claimed." *Id.* The ALJ further observed that Plaintiff's "medication refill records" reflected that her symptoms were well controlled. *Id.* at 598 (citing *id.* at 276). The ALJ also noted that examination findings from 2012 and 2015 evinced that Plaintiff was not significantly physically impaired by her alleged symptoms. *Id.* at 598–99 (citing *id.* at 294, 276, 532–34). Indeed, the examination notes in the record "generally showed only mild findings." *Id.* at 599. Accordingly, the Court can find no error in the ALJ's assessment of Plaintiff's subjective complaints because the ALJ found that (1) Plaintiff's symptoms *could* be caused by her medically identifiable impairments and (2) the evidence in record did not support the *degree* of impairment

---

[9] SSA regulations provide further guidance on how the agency evaluates a claimant's subjective symptoms. *See generally* 20 C.F.R. § 404.1529(c). Of note, the regulations acknowledge that sometimes a claimant's symptoms are more severe "than can be shown by objective medical evidence alone." § 404.1529(c)(3). Because "symptoms, such as pain, are subjective and difficult to quantify," the regulations outline several factors that it may consider in evaluating such symptoms including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of a claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications a claimant takes to alleviate her symptoms; (5) treatments, other than medication, the a claimant receives or has received for relief of her symptoms; (6) any measures the claimant takes to relieve her symptoms; and (7) any other factor that concerns the claimant's functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Plaintiff alleged.

Plaintiff argues that the ALJ "did not mention all of the objective evidence or all of [Plaintiff's] own statements during her subjective-allegations analysis." ECF 18 at 24. But this type of exhaustive recitation of the hundreds (and sometimes thousands) of pages of evidence that a Social Security case can consist of is required by neither the regulations nor Tenth Circuit precedent. *C.f. Sanders v. Astrue*, 366 F. App'x 767, 770–71 (10th Cir. 2008) (holding that an ALJ need not discuss all the evidence in the record if the ALJ's decision makes clear that all the evidence was considered (citing *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)) (unpublished). Instead, the ALJ must cite to specific evidence that "led [her] to conclude [a claimant's] subjective complaints were not credible." *Kepler v. Chater*, 68 F.3d 387, 392 (10th Cir. 1995). And, here, as described above, the ALJ *did* cite to specific evidence. Barring a legal or factual error, the Court will not overturn the ALJ's decision on a Plaintiff's contention that the evidence should have been evaluated differently. *Hendron*, 767 F.3d at 954.

## V.   CONCLUSION

The ALJ applied the correct legal standards and his findings and decision were supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant cause be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.